UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DESIGN BASICS, L.L.C.,

               Plaintiff,

v.

DESHANO COMPANIES, INC.; DESHANO
HOMES, INC.; DESHANO LUMBER
COMKPANY; DESHANO CONSTRUCTION
COMPANY; COUNTY-WIDE BUILDERS,
INC.; and MICHIGAN CUSTOM HOMES

               Defendants.

_____/

Case No.: 10-14419
Honorable Thomas L. Ludington

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND
MOTION FOR SUMMARY JUDGMENT, GRANTING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

This is a copyright infringement case brought against Defendants DeShano Companies,
Inc., DeShano Homes, Inc., DeShano Lumber Company, DeShano Construction Company,
County-Wide Builders, and Michigan Custom Homes by Plaintiff Design Basics, LLC. Plaintiff
is engaged in the business of creating, publishing, and licensing architectural designs. Plaintiff
alleges that Defendants, without authorization, created derivatives of many of its copyrighted
designs; advertised those designs over the internet; and used the designs, or their derivatives, to
construct and sell homes. Now before the Court are Defendants' Motion to Dismiss Plaintiff's
second amended complaint, Defendants' Motion for Summary Judgment, and Plaintiff's Motion
for Partial Summary Judgment. For the reasons that follow, Defendants' Motions will be denied,
and Plaintiff's motion will be granted.

**I**

Plaintiff began its existence as Design Basics, Inc. in 1984.  It is engaged in the business of creating, publishing, and licensing architectural designs.  Plaintiff operates out of Omaha, Nebraska, and licenses its designs to home-builders across the country.  Plaintiff sells books that contain its copyrighted architectural plans, and its website offers well over two-thousand designs to choose from.  Plaintiff also frequently distributes advertising materials that include its architectural plans to builders in areas where it has seen success.

Gary DeShano has been building homes in Michigan since 1966, and created and operates Defendants DeShano Construction Company and Michigan Custom Homes.  Defendant County-Wide Builders was created and is operated by Neil DeShano, Gary's brother.  Gary's son, Chad DeShano, created and operates Defendants DeShano Companies, Inc., DeShano Lumber Company, and DeShano Homes, Inc.  Defendant DeShano Lumber furnishes lumber and other construction materials, while the other Defendants work together to construct residential houses in Michigan.

In April 2010, Plaintiff realized that Defendants may have infringed on its copyrighted materials.  The Architectural Works Copyright Registration Numbers, Blueprint Copyright Registration Numbers, and Houseplan Copyright Registration Numbers at issue are provided in paragraphs 15-17 of Plaintiff's second amended complaint.  Pl.'s Sec. Am. Compl. (hereinafter "Pl.'s Compl.")-, ECF No. 71.  Although Plaintiff provides numerous Copyright Registration Numbers, not all are relevant to this case.  Instead, only seven are truly at issue — the seven plans that Plaintiff claims Defendants copied and used to produce derivatives: Patterson – 1380, VA#314-024; Arbor – 2526, VA#524-184; Kirby Farm – 8093, VA#729-227; Angel Cove – 8094, VA#726-351; Wind River – 8033, VA#726-344; Comstock – 2778, VA#1-295-836; and

Crimson Creek – VA#736-681.  Plaintiff sent a cease and desist letter in June 2010 to all Defendants except DeShano Lumber and DeShano Homes.  Although mailed to four different companies, each letter bore the same address — 325 Commerce Ct, Gladwin, Michigan.  Plaintiff received no response.

Defendants had purchased a book of architectural plans from Plaintiff in January 1993, but none of the contested plans were included.  However, Plaintiff does display its architectural plans on its website after they are copyrighted.  It also sends unsolicited materials to builders that include those plans.  Plaintiff's database lists forty-one publications that were distributed to builders like Defendants at various times since 1991.  These publications, taken together, include all of the plans at issue.  According to Plaintiff's records, every plan had been published and distributed by January 1996; some much earlier.  Joan David, Defendants' employee for many years, was asked if she had ever heard of Plaintiff.

> Q:    Had you ever heard of Design Basics?
> A:    Oh, yea.
> Q:    And how – how had you heard of Design Basics?
> A:    Design – we were on a mailing list.  We would get Design basic plan books unsolicited in the office all the time.

Joan David Dep., 27, Pl.'s Mot. Ex. 4, ECF No. 55.  An inter-office memo, written by Ms. David and dated June 1998, was found in Defendants' records attached to Plaintiff's Kirby Farm plan.  Pl.'s Compl., Ex 7.  Ms. David wrote, "I do love this plan. . . . I think it would be one that needs work but the master plan is there."  *Id.*  The Kirby Farm plan had been published and distributed by Plaintiff only two months earlier.  Pl.'s Compl., Ex. 6.  Despite receiving these plans at various times over the years, Defendants never purchased licenses for the plans' authorized use.

Plaintiff filed a complaint against DeShano Companies, Inc. on November 4, 2010.  Plaintiff was subsequently granted leave to file an amended complaint to include affiliated

- 3 -

enterprises DeShano Homes, Inc., DeShano Lumber Company, DeShano Construction Company, County-Wide Builders, and Michigan Custom Homes.

In April 2012, Defendants filed a motion to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants claimed Plaintiff had failed to plead sufficient facts to indicate where original, protectable material was contained in its copyrighted works, and where any such original material appeared in Defendants' homes. Defendants' motion was granted, but Plaintiff was permitted to file another amended complaint.

Five days later Plaintiff returned with a strapping fifty-six-page complaint, braced with nearly three-hundred pages of exhibits. That second amended complaint alleges that Defendants copied Plaintiff's original architectural plans and used the derivatives to build and sell homes in Michigan. Over twenty-nine pages, Plaintiff painstakingly identifies forty-one homes completed by Defendants using plans derived from six of Plaintiff's designs. In each of those counts, Plaintiff alleges the underlying plan was a copyrighted, original architectural work it created, which Defendants imitated or transcribed in whole or substantial part. Plaintiff has stressed that each architectural plan, in its entirety, constitutes an original work under 17 U.S.C. 101 *et seq.* Pl.'s Compl. 47. Included with Plaintiff's complaint are documents showing valid copyrights for each of the plans. Additionally, Plaintiff included side-by-side drawings and overlays to depict the similarity between seven of its original plans, and the plans it alleges Defendants created by copying them.

Defendants filed a Motion for Summary Judgment on May 29, 2012. The motion asserts eight grounds for judgment as a matter of law: (1) whether plaintiff owns the copyrights in question; (2) whether Plaintiff's action is barred in part by the Copyright Act's statute of limitations; (3) whether Defendants had access to Plaintiff's copyrighted plans; (4) the number of

copyrights at issue; (5) whether Plaintiff's house plan copyrights concern compilations entitled to "thin" copyright protection; (6) whether Plaintiff's plans constitute original work; (7) whether Defendants infringed on Plaintiff's copyrighted works; and finally, (8) whether, as a matter of law, Defendants' house plans are substantially similar to Plaintiff's copyrighted plans. Plaintiff responded with a motion of its own, moving for partial summary judgment on the copyright ownership and access issues.

Then on July 30, 2012, Defendants again moved to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to *Fed. R. Civ. P.* 12(b)(6). The essence of Defendants' argument is that Plaintiff has failed to explain what part of its architectural drawings are protectable material, and where such material is contained in Defendants' designs.

## II

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement showing that the pleader is entitled to relief." This standard does not require "detailed factual allegations," but it demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). A claim is plausible when the plaintiff pleads factual content sufficient to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. When determining whether a plaintiff has stated a claim upon

which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, and accept all factual allegations as true. *Twombly*, 550 U.S. at 570.

In the context of copyright infringement, the Sixth Circuit has established that a greater particularity in pleading is required. *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit. Educ. And Consulting, Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008). This heightened standard is necessary because copyright cases are conducive to "abusive litigation." *Id*. Therefore, a showing of plausible grounds for relief is required. *Id*. Plausible grounds calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of unlawful conduct. *Id*.

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). All justifiable inferences from the evidence must be drawn in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## III

Not all copying is unlawful infringement. To establish a copyright infringement claim, two elements must be proven: (1) the plaintiff has ownership of a valid copyright, and (2) the defendant copied constituent elements that are original. *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co., Inc.*, 499 U.S. 340, 361 (1991). In Plaintiff's second amended complaint, both requirements have been satisfied to the requisite degree.

**A**

To satisfy the first, Plaintiff has included documentation showing valid copyrights for each of the architectural plans it claims were copied. However, each of these copyright registrations lists Design Basics, Inc., not Design Basics, LLC (Plaintiff), as the rightful owner of the copyrights. In explanation, Plaintiff outlines its corporate history to establish that the copyrights were transferred "by operation of law." 17 U.S.C. § 204(a).

Cases dealing with copyright transfers by operation of law are scarce. *See Taylor Corp. v. Four Seasons Greetings, LLC,* 403 F.3d 958, 963 (8th Cir.2005) ("[S]parse case law addresses the transfer of copyright by operation of law."); *Valdez v. Laffey Assocs.,* 2010 WL 1221404, *6 (E.D.N.Y. 2010) (noting sparsity of case law on transfer of copyright ownership by operation of law). Indeed, even the Copyright Act does not define what constitutes a transfer by operation of law. *See Taylor,* 403 F.3d at 963.

The cases addressing the issue generally concern transfer by operation of state law, often arising from corporate mergers or dissolutions. *Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*, 2012 WL 3125120, *5 (1st Cir. 2012). *See Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 721 (9th Cir. 1984) (holding copyright transfers from one corporation to another during merger was valid transfer by operation of law); *Fantasy, Inc. v. Fogerty*, 664 F. Supp. 1345, 1356 (N.D. Cal. 1987) (holding copyright transfer from dissolving corporation to sole shareholder was valid transfer by operation of law).

According to Plaintiff, DBI Holdings, LLC was formed as a Nebraska limited liability company for the purpose of merging with Design Basics, Inc. Pl.'s Compl. 3. After the merger, the name of DBI Holdings, LLC was changed to Design Basics, LLC. *Id.* Plaintiff asserts this

merger transferred the copyrights owned by Design Basics, Inc. to Design Basics, LLC.  Such is

the case.  Nebraska law provides:

> (5) The surviving or new limited partnership shall possess all the rights,
> privileges, immunities, and powers, of a public as well as of a private nature, of
> each of the merging or consolidating limited partnerships and other business
> entities, subject to the Nebraska Uniform Limited Partnership Act. All property,
> real, personal, and mixed, all debts due on whatever account, all other things and
> causes of actions, and all and every other interest belonging to or due to any of the
> limited partnerships and other business entities, as merged or consolidated, shall
> be taken and deemed to be transferred to and vested in the surviving or new
> limited partnership without further act and deed and shall thereafter be the
> property of the surviving or new limited partnership as they were of any of such
> merging or consolidating business entities.

Neb. Rev. Stat. § 67-248.02.  DBI's subsequent name-change — to Design Basics, LLC — did

not affect its ownership of the copyrights in question.  It follows that what was once Design

Basics, Inc.'s property, is now the Plaintiff's property.

A certificate of copyright registration is prima facie evidence of ownership of a valid

copyright.  *BancTraning Video Sys. V. First Am. Corp.*, 956 F.2d 268, *3 (6th Cir. 1992) (citing

17 U.S.C. § 410(c)).  *See Also MyWebGrocer, LLC v. Hometown Info, Inc.,* 375 F.3d 190, 192

(2d Cir.2004).  Defendants' motion to dismiss fails to address the issue.  Accordingly, Plaintiff

has satisfied its burden to plead ownership of the copyrights in question.

## B

Plaintiff's next hurdle is to demonstrate the reasonable expectation that Defendant has

copied protected material that is original in nature.  The Sixth Circuit has adopted a two-part test:

(1) "identifying which aspects of the artist's work, if any, are protectible[1] by copyright"; and (2)

"determining whether the allegedly infringing work is 'substantially similar' to the protectible

---

[1] Between "protectable" and "protectible," "The first is preferred."  Bryan A. Garner, *Garner's Dictionary of Legal Usage*, 725 (Oxford Univ. Press 3d ed. 2011).  We use the latter only to maintain accurate citations.

elements of the artist's work." *Stromback v. New Line Cinema,* 384 F.3d 283, 294 (6th Cir. 2004).  At the pleadings stage, Plaintiff has cleared both.

<div align="center">

**i**

</div>

Defendants believe that Plaintiff has not identified what constitutes the original, protectable material in each of its plans.  In fact, Defendants allege, "Nowhere in its Second Amended Complaint does Plaintiff even make a conclusory, broad statement of what constitutes the protectable subject matter of its copyrights." Def.'s Mot. to Dism. 3, ECF No. 73.  Contrary to Defendants assertion, Plaintiff alleges that each of its plans is original when viewed as a whole. Pl.'s Compl., ¶¶ 18–47.  In fact, Plaintiff does so in forty-two straight counts, with numbing consistency.  And while Defendants maintain architectural works, viewed as a whole, cannot be original, this is simply incorrect.

It is black-letter law that courts accept as protected "any work which by the most generous standard may arguably be said to evince creativity." 1–2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.08 (2012).  To qualify for copyright protection, a work must be original — it must possess "at least some minimal degree of creativity." *Feist Publ'ns*, 499 U.S. at 345. The work need not be "particularly novel or unusual." *Mattel, Inc. v. Goldberger Doll Mfg. Co.,* 365 F.3d 133, 135 (2d Cir. 2004). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Feist Publ'ns*, 499 U.S. at 345 (citation and internal quotation marks omitted).

As to what is protectable in this case, "architectural works, as their own subject matter category under the Copyright Act, are unique." *Frank Betz Associates, Inc. v. Signature Homes, Inc.*, 2010 WL 1373268, *3 (M.D. Tenn. Mar. 29, 2010).  The Copyright Act provides that

copyright protection extends to "architectural works."  17 U.S.C. § 102(a)(8).  An "architectural work" is defined to include "the *overall form*, as well as the *arrangement and composition of spaces and elements in the design*, but does not include individual standard features."  *Id*. at § 101 (emphasis added).  We need not travel outside the text of the Copyright Act itself to see that architectural plans, as a whole, can constitute an original work.

The legislative history concerning the 1990 Architectural Works Copyright Protection Act ("AWCPA") supports this conclusion.  "Contrary to the Committee's report accompanying the 1976 Copyright Act with respect to industrial products, the aesthetically pleasing overall shape of an architectural work could be protected under this bill."  H.R. Rep. No. 735 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6935, 6951.  "Creativity in architecture frequently takes the form of a selection, coordination, or arrangement of unprotected elements into an original, protectible whole."  *Id.* at 6949.  These statements confirm the combination of standard features in architecture may be protected.

Relevant caselaw is consistent.  "The arrangement and composition of spaces and elements in the design . . . may qualify as an original design element."  *Signature Homes*, 2010 WL 1373268, *3.  In *Signature Homes*, the court found the plaintiff's eleven architectural designs displayed "original design elements in the way that their standard features are arranged."  *Id*.

Further, as to whether design elements of a house are functionally required, and therefore not protected, "although the component parts of a house, as captured in a house plan, perform certain functions, the overall design and arrangement of those component parts is not functionally required."  *Id*. at *4.  "Just as someone using a kaleidoscope mixes standard colors into a new pattern, there are certain common features that go into a house design — a kitchen,

bathroom, bedrooms — and the designer moves each of those elements into an original, potentially protectible arrangement." *Id.*

Contrary to Defendants' direction, there is no need to conduct a test of separability when considering the copyrightable nature of an architectural house plan as a whole. "Non-functionally required elements will be protected without considering physical or conceptual separability." *Id. See also* 1-2 *Nimmer* § 2.20 at n. 29. "In each case, the courts must be free to decide the issue upon the facts presented, free of the separability conundrum presented by the useful articles doctrine applicable for pictorial, graphic, and sculptural works." 1990 U.S.C.C.A.N. at 6952. In another case involving Frank Betz as a plaintiff, *Frank Betz Associates, Inv. V. J.O. Clark Const., LLC.*, 2010 WL 4628203, *6 (M.D. Tenn. Nov. 5, 2010), the court refused to filter out elements of the plaintiff's designs because the court was "persuaded that the designs will be, on the whole, protectable."

When Plaintiff's houseplans are viewed as a whole; original, protectable work exists. The house's perimeter, establishing dimension and shape — along with the juxtaposition and arrangement of interior walls, bedrooms, kitchens, bathrooms, windows, doors, laundry-rooms, porches, stairways, and corridors — produces a compilation of component parts that is original and unique. Plaintiff has sufficiently pled that it has created protectable architectural works with all seven contested house plans through its combination of these various factors.

**ii**

Finally, to survive Defendants' Motion to Dismiss, Plaintiff must raise the reasonable expectation that discovery will uncover illegal copying of its copyrighted material. While much of the discovery process has already been conducted in this case, based on only that information contained in Plaintiff's second amended complaint, Plaintiff states a claim for relief.

"Since direct evidence of copying is rarely available, a plaintiff may establish 'an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue.'"   *Stromback v. New Line Cinema*, 384 F.3d 283, 293(6th Cir. 2004) (quoting *Ellis v. Diffie,* 177 F.3d 503, 506 (6th Cir.1999)).   Access is essentially "[viewing] or having a reasonable opportunity to [view] the plaintiff['s] work and thus having the opportunity to copy."   *Id.*

The Sixth Circuit has observed that "the relationship between the degree of proof required for similarity and access may be inversely proportional: where the similarity between the two works is strong, less compelling proof of access may suffice, and vice-versa." *Stromback*, 384 F.3d at 293.   Substantial similarity exists where "the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Id.* at 297 (quoting *Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1288 (10th Cir.1996)).   In the end, the question is whether, based upon her "net impression" of the works' expressive elements, the ordinary lay observer would find them substantially similar to one another.  *Stromback*, 384 F.3d at 293.  *See, e.g., Ellis,* 177 F.3d at 506 n.2.

In this case, Plaintiff has pled sufficiently on both counts.  Plaintiff's complaint, taken as true, establishes that Defendants received Plaintiff's architectural drawings and advertisements on numerous occasions.  Pl.'s Compl. Ex. 5.  Additionally, Defendants purchased at least one book of Plaintiff's architectural plans.  Pl.'s Compl. 7.

Plaintiff added to this evidence of opportunity a significant demonstration of similarity between its plans and the alleged derivative works of Defendants.  One of Defendants' inner office memos, attached to Plaintiff's Kirby Farm plan, indicates Defendants' "love" of the plan,

and while noting changes might be in order, "the master plan is there."  Pl.'s Compl. Ex. 7. Plaintiff alleges Defendants copied the Kirby Farm plan to build thirty-one homes.

Finally, the layout overlays Plaintiff provided were telling.  Pl.'s Compl. Ex. 11. Plaintiff's original works and the Defendants' plans, based solely on the complaint, could constitute substantially similar material.  Plaintiff has satisfied its burden at the pleading stage to establish a reasonable expectation that Defendants infringed on its copyrights.  For these reasons, Defendants' motion to dismiss Plaintiff's second amended complaint is denied.

## IV

Having concluded Plaintiff has sufficiently pled a cause of action, Defendants' and Plaintiff's motions for summary judgment will next be considered.

## A

Defendants' first claim is that Plaintiff does not own the copyrights in question, and so has no standing to sue for infringement.  In its motion for partial summary judgment, Plaintiff claims the opposite.  All of the evidence, viewed most favorably to Defendants, makes clear Plaintiff is the owner of the copyrights in question.  Summary judgment is appropriate in its favor on this point.

As discussed above, Plaintiff has adequately argued that copyright ownership transferred from Design Basics, Inc. to Design Basics, LLC by operation of law when the two companies merged.  Although not contested in the pleadings, in their motion for summary judgment Defendants argue that Plaintiff does not own the copyrights at issue.

Defendants argue that there was a sale of stock to a Texas DBI Holdings before the merger between the two companies.  This is, of course, irrelevant.  Defendants' exhibits demonstrate that sale never transferred any of Design Basics, Inc.'s copyrights to Texas DBI.

Section 1.2 of the Stock Purchase Agreement, attached to Defendant's Motion for Summary Judgment as Exhibit 2, ECF No. 44, maintains, "At the time of the Closing, [Design Basics, Inc.] shall own all assets that it owns on the date of this Agreement with the exception of the Excluded Assets (hereinafter defined) including, without limitation the assets listed in Exhibit "B" hereto." *Id.* Exhibit C of that agreement lists the excluded assets Design Basics, Inc. did not retain after the closing, while Exhibit B lists those it did. The first item on Exhibit B, entitled "List of [Design Basics, Inc.] Assets," is "1,148 plans copyrighted in the name of [Design Basics, Inc.] and any variations thereof." *Id.* at Ex. B. Exhibit C mentions nothing about copyrighted architectural plans. Design Basics, Inc. sold stock to Texas DBI, not its copyrights; those it validly transferred, by operation of law, through its merger with Nebraska's DBI Holdings, LLC.

A certificate of copyright registration is prima facie evidence of ownership of a valid copyright. *BancTraning Video Sys. V. First Am. Corp.*, 956 F.2d 268, *3 (6th Cir. 1992) (citing 17 U.S.C. § 410(c)). *See also MyWebGrocer, LLC v. Hometown Info, Inc.,* 375 F.3d 190, 192 (2d Cir. 2004). Defendants may not rebut this presumption. Numerous courts have held that when there is no dispute between the author of a copyright and a transferee, third-party infringers cannot rely on 17 U.S.C. § 204(a) to escape suit. "[W]here there is no dispute between copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement." *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995). "In this case, in which the copyright holder appears to have no dispute with its licensee on this matter, it would be anomalous to permit a third party infringer to invoke [204(a)] against the licensee." *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982). "[W]here the original copyright owner and transferee of copyright . . . agree as to the

- 14 -

ownership of the copyright . . . the alleged infringer is not allowed to invoke Title 17's writing requirement for copyright transfers to avoid suit." *Monroig v. RMM Records & Video Corp.*, 194 F.R.D. 388, 391 (D.P.R. 2000).

Plaintiff has demonstrated that its copyrights transferred from Design Basics, Inc. to Design Basics, LLC by operation of law, as authorized under 17 U.S.C. § 204(a). Defendants cannot dispute this point, given their relationship to the copyrights, and Plaintiff's motion for partial summary judgment on this issue is granted. Defendants' motion on this issue is denied.

## B

We next consider Defendants' contention concerning the number of copyrights at issue in this action, and whether statutory or actual damages will be considered. As previously explained, although Plaintiff lists nineteen copyrights in its amended complaint, it goes on to allege that only seven were actually copied. Six were used to construct actual homes — Patterson – 1380, VA#314-024; Arbor – 2526, VA#524-184; Kirby Farm – 8093, VA#729-227; Angel Cove – 8094, VA#726-351; Wind River – 8033, VA#726-344; and Comstock – 2778, VA#1-295-836. Plaintiff claims the seventh was simply copied and used to produce derivatives — Crimson Creek – VA#736-681. Nowhere has Plaintiff alleged, or offered evidence, to show the other twelve copyrights it listed in its second amended complaint were copied or otherwise infringed upon. Accordingly, the disputed issues of material fact in this case concern only these seven copyrights.

Defendants' assertion that the Crimson Creek plan and the Kirby Farm plan cannot both be considered is unavailing. While there was testimony concerning the similarity of the two plans, they are protected under distinct copyrights. As it currently stands, a reasonable jury

could conclude that the two separate copyrights cover two separate plans, and as such are two separate works.

Finally, as provided by 17 U.S.C. § 504(a), and acknowledged by both parties, an infringer of copyrights is liable for either actual damages or statutory damages. "[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." 17 U.S.C.A. § 504(c). It is not necessary to resolve this concern at present.

### C

The next issue Defendants raise is whether Plaintiff's action is barred in part by the Copyright Act's statute of limitations. Under the Copyright Act, a claim for copyright infringement has a three-year statute of limitations commencing when the claim "accrued." 17 U.S.C. § 507(b). Defendants argue that Plaintiff's claims concerning infringement that occurred prior to November 4, 2007 — three years before Plaintiff filed its original complaint — are untimely. This argument lacks merit. Plaintiff's statute of limitation in this case "accrued" not when the alleged infringements occurred, but when Plaintiff can be charged with knowledge of the infringements. Plaintiff claims it first became aware of Defendants' actions "on or about April 18, 2010." Pl.'s Compl. 5. Defendants claim Plaintiff knew earlier, sometime in the fall of 2009. Under either interpretation, Plaintiff timely filed its complaint in November 2010, well within three-years of its notice of the infringements.

Reviewing the relevant case authority on the issue supports this conclusion. The Sixth Circuit determined that "[a] copyright-infringement claim 'accrues when a plaintiff knows of the potential violation or is chargeable with such knowledge.'" *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007) (quoting *Bridgeport Music, Inc. v.*

*Rhyme Syndicate Music,* 376 F.3d 615, 621 (6th Cir. 2004). Both *Roger Miller* and *Bridgeport Music* addressed factual situations where the plaintiff *did* know of the alleged infringement more than three years before filing suit, and held that suit was untimely. However, the courts established the proper consideration for when a claim accrues is when a plaintiff knows of the potential violation, or is chargeable with such knowledge. *See Roger Miller*, 477 F.3d at 390; *Bridgeport Music*, 376 F.3d at 621.

Other circuit courts dealing with the issue have held in favor of this "discovery" rule. Under the discovery rule, a cause of action accrues "when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009) (quoting *Disabled in Action Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199, 209 (3d Cir. 2008)). Under the injury rule, a cause of action "accrues at the time of the injury." *Haughey*, 568 F.3d at 433. In *Haughey*, the court indicated, "use of the discovery rule comports with the text, structure, legislative history and underlying policies of the Copyright Act. . . . we hold that the federal discovery rule governs the accrual of civil claims brought under the Copyright Act." *Id.* at 437.

The First Circuit has similarly held that a claim under the Copyright Act "accrues when a plaintiff 'knows or has reason to know of the act which is the basis for the claim.'" *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 88 (1st Cir. 2007) (quoting *Santa-Rosa v. Combo Records*, 471 F.3d 224, 227 (1st Cir. 2006)). In the Fourth Circuit, a copyright claim "accrues when 'one has knowledge of a violation or is chargeable with such knowledge.'" *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 796 (4th Cir. 2001) (quoting *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 202 (4th Cir. 1997)). In the Fifth Circuit, "a copyright claim accrues 'when [the party]

knew or had reason to know of the injury upon which the claim is based.'" *Jordan v. Sony BMG Music Entm't Inc.*, 354 F. App'x 942, 945 (5th Cir. 2009) (quoting *Pritchett v. Pound*, 473 F.3d 217, 220 (5th Cir. 2006)).

In the Seventh Circuit, "the copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights." *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (citing *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983)). In the Eighth Circuit, although dealing with another issue, the court held, "In federal question cases, the discovery rule applies in the absence of a contrary directive from Congress." *Comcast of Illinois X v. Multi-Vision Electronics, Inc.*, 491 F.3d 938, 944 (8th Cir. 2007). Nothing in the Copyright Act disclaims the use of the discovery rule. This Eighth Circuit decision lends support to the application of the discovery rule here. The Ninth Circuit is no different. In *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004), the court held that the Copyright Act "permits damages occurring outside of the three-year window, so long as the copyright owner did not discover — and reasonably could not have discovered — the infringement before the commencing of the three-year limitation period." There, the plaintiff was allowed to recover damages for infringement that occurred outside the three-year window of filing its complaint, "[b]ecause [the plaintiff] did not discover [the defendant's] infringement until within three years of filing suit." *Id.*

Defendants argue all but two of Plaintiff's claims should be barred by the application of the injury rule, relying on two district court cases. *See Phoenix Publishing Int'l v. Mutual of Omaha Ins. Co.*, 2000 WL 33173916 (W.D. Mich. Apr. 5, 2000); *Goldman v. Healthcare Management Sys.*, 2008 WL 2559030 (W.D. Mich. June 19, 2008). Notably, *Phoenix Publishing* occurred before the Sixth Circuit's decisions in *Roger Miller* and *Bridgeport*, and as such did not

have the current standard to guide its decision. Further, at least one district court from the Western District of Michigan has declined to follow the reasoning in *Goldman*. In *Design Basics, LLC v. Roersma & Wurn Builders, Inc.*, 2012 WL 1830103, *1 (W.D. Mich. May 18, 2012), the court applied the discovery rule, holding, "Because the uncontroverted proof shows that Plaintiff filed suit within three years after it became aware of the alleged infringements, Plaintiff is entitled to partial summary judgment on the statute of limitations defense." The court expressly stated, "To the extent *Goldman v. Healthcare Management Systems, Inc.* . . . is to the contrary, the Court respectfully disagrees with it." *Roersma*, 2012 WL 1830103, *3 n.1.

The overwhelming trend is the application of the discovery rule for determining when a copyright claim accrues, both in the Sixth Circuit and elsewhere. It is appropriate to apply the discovery rule to this case. Because Plaintiff filed its claim within three-years of discovering the alleged infringement by Defendants, its claims are timely. Defendants' motion on this issue is denied.

## D

The most significant issue in this case is whether Plaintiff's architectural design plans constitute original work under the Copyright Act. Defendants have moved for summary judgment on the issue, arguing that Plaintiff has failed to identify where original work exists in its plans. Quite the opposite — Plaintiff has continuously alleged that its plans, as a whole, constitute original works that are protectable under the Copyright Act.

Defendants argue Plaintiff has "refused and/or cannot identify any original elements in its copyrights." Defs.' Mot. Summ. J. 21, ECF No. 43. Contrary to Defendants' assertions, Plaintiff alleges that each of its plans is original when viewed as a whole. While Defendants claim architectural works, viewed as a whole, cannot be original and that this Court must filter

out unoriginal elements, this assertion is incorrect.  As discussed at length above, architectural houseplans can constitute original works when viewed as a whole.  Further, no separability test is appropriate in this context, given the combination of unprotected parts into a protectable whole.

Defendant does not argue that the overall form of Plaintiff's plans are not original — only that such overall forms are not worthy of protection.  This legal position, in light of the foregoing discussion, lacks merit.  The evidence in this case demonstrates that Plaintiff has created protectable architectural works with all seven contested house plans.  While standard elements such as windows and doors will not be protected, the overall combination of the material elements in the plan can be.  The configuration of a house's component parts — its perimeter and the special relationship of rooms, windows, hallways, doors, porches, and attached garages — can be protected as a whole.  This is exactly what Plaintiff has identified as its original work in this case.  Defendants' motion on this issue is denied.

## E

Defendants' next argument for judgment as a matter of law will be similarly dismissed. Defendants allege that Plaintiff's house plans are compilations, entitled to only "thin" copyright protection.  Defs.' Mot. Summ. J. 16.  This is not so, and Defendants are not entitled to summary judgment on this issue.

According to the Copyright Act, "A 'compilation' is a work formed by the collection and assembling of *preexisting* materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitute an original work of authorship."  17 U.S.C. § 101 (emphasis added).  In this case, Plaintiff did not start with pre-formed bedrooms, kitchens, and hallways and then assembled them as one would a jigsaw puzzle.  Plaintiff had to first create

those elements, and then arrange them.  This is not the type of preexisting material or data the Copyright Act describes as a compilation.

The Copyright Act maintains that architectural works, as a whole, are worthy of copyright protection.  The legislative history shows that in extending this protection to architectural works, Congress did not intent to require a heightened level of similarity.

> As a result of the incorporation of the general standard of originality for architectural works, determinations of infringement of architectural works are to be made according to the same standard applicable to all other forms of protected subject matter. The references in the definition of "architectural work" to "overall form," and to the nonprotectibility of "individual standard features" are not intended to indicate that a higher standard of similarity is required to prove infringement of an architectural work, or that the scope of protection of architectural works is limited to verbatim or near-verbatim copying.

1990 U.S.C.C.A.N. at 6952.

Defendants advance two cases from the Eastern District of Virginia and one from the Eleventh Circuit to support the proposition that architectural works deserve only "thin" copyright protection.  *See Intervest Const. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 919 (11th Cir. 2008); *The Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC*, 716 F. Supp. 2d 428, 438 (E.D. Va. 2010); and *Charles W. Ross Builder, Inc. v. Olsen Fine Home Buiding, LLC*, 2011 WL 4590003, *10 (E.D. Va 2010).   However, "thin" copyright protection requires a showing of "supersubstantial similarity, essentially verbatim copying, to prevail on an infringement claim." *Transwestern Publ'g Co. v. Multimedia Mktg. Assoc., Inc.*, 133 F.3d 773, 777 (10th Cir. 1998). As shown above, Congress did not intend "that the scope of protection of architectural works is limited to verbatim or near-verbatim copying."  1990 U.S.C.C.A.N. at 6952.

*Frank Betz Associates, Inc. v. J.O. Clark Const., LLC*, *supra*, provides the better analysis. The only case on point from within the Sixth Circuit, the court maintained, "With respect to Defendants' contention that architectural works that incorporate a minimum of creativity, such as

- 21 -

Plaintiff's home designs, are 'compilations' and as such entitled only to the 'thinnest' protection, the Court finds that, appealing as this argument may be, it is not supported by the language of the AWCPA or any Sixth Circuit opinion."  *Id*. at *6 n.5.

In light of the legislative history of the AWCPA, Congress's intent that architectural works *not* be subjected to a higher level of similarity, and the persuasive reasoning of *Frank Betz v. J.O. Clark*, Defendants' invitation to apply only the thinnest copyright protection to Plaintiff's architectural works is declined.

<div align="center">

**F**

</div>

The second issue that both parties have contested through their respective motions for summary judgment is whether Defendants had access to Plaintiff's copyrighted materials.  At this juncture, Defendants have conceded access to the Kirby Farms plan, likely because an inescapable copy was lodged in their files.  They do deny access to the other six copyrights at issue.  Viewing the evidence in Defendants' favor, they had reasonable opportunity to view and copy Plaintiff's work.

Access is essentially seeing or having a "reasonable opportunity" to see the copyrighted work, and thus having the opportunity to copy it.  *Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004).  Access is proven if Plaintiff shows Defendants had an opportunity to view or to copy its architectural plans.  *Id*.  However, access is not established through mere speculation or conjecture, *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 846 (M.D. Tenn. 2006), and evidence creating only the "bare possibility" that Defendants had access will not suffice.  *Mag Jewelry Co., Inc. v. Cherokee, Inc.*, 496 F.3d 108, 117 (1st Cir. 2007).

When there is no direct evidence of access, circumstantial evidence may be used to demonstrate "reasonable access." *King Records*, 438 F. Supp. 2d at 846. Two forms of circumstantial evidence are acceptable: "(1) a particular chain of events establishing defendant's access to plaintiff's work, or (2) plaintiff's work has been widely disseminated." *Id*. (citing *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000). Access has even been found where a third party, in contact with both the plaintiff and the defendant, is in possession of the copyrighted work. *Winfield Collection, Ltd. v. Gemmy Indus., Corp.*, 147 F. App'x 547, 553 (6th Cir. 2005).

In this case, Defendants had a reasonable opportunity to view and copy Plaintiff's work. All of the contested house plans were available on Plaintiff's website as early as 1998. Pl.'s Compl. 6. Alone, this is nothing more than the bare possibility that Defendants might have seen the plans, the kind previous courts have warned about. But this evidence does not stand alone.

Greg Dodge, Plaintiff's account manager, established that Plaintiff distributed forty-one different publications in Michigan that included its architectural works. *Id*. He created a spreadsheet that indicates when various plans were published, in what medium, and whether they were distributed to Michigan builders. *Id*. As Defendants' own employee testified, Defendants were on Plaintiff's mailing list, and received Plaintiff's plan books "all the time." Pl.'s Mot. Ex. 4.

Plaintiff alleges that Defendants first utilized its Patterson plan to build a home in March 1997. Pl.'s Compl. That plan had been published and distributed to Michigan builders on five different occasions by January of 1997. Pl.'s Compl. Ex. 6. Plaintiff claims its Arbor plan was used by Defendants to build a home in April 1998. The plan had been published and distributed four times by November of 1997. *Id*. Plaintiff claims Defendants used its Comstock plan to

build a home in August of 2001.  Comstock was published and distributed to Michigan builders four times before November of 1999.  *Id*.  The Wind River plan, allegedly copied and used to build a home in March 2001 was published and distributed in January of 1996.  *Id*. Crimson Creek, although only allegedly copied, was published and distributed five times between 1995 and 2005.  *Id*.

The Kirby Farm plan fits with the pattern.  Even though Defendants concede access, it sheds light on Defendants' opportunity to copy all the other plans.  Plaintiff alleges Defendants copied and used its Kirby Farm plan to build thirty-one homes, starting in July 1999.  The plan was not included in the book Defendants purchased, so how did they come to possess it?  The plan was published and distributed in *Spec Builder* #05 in January 1995, and in *Seasons – Empty Nester* in April 1998.  *Id*.  The Patterson, Arbor, Angel Cove, Comstock, and Crimson Creek plans were all published in various *Spec Builder* volumes, with Crimson Creek and Angel Cove appearing alongside Kirby Farm in 1995.  *Id*.  Crimson Creek, Comstock, and Angel Cove also appeared in the April 1998 *Seasons* publication.  *Id*.

Access only requires a reasonable opportunity to view and copy work.  The Sixth Circuit has concluded a defendant had "access" to protected architectural plans simply because it built houses within three miles of the plaintiff's homes.  *Robert R. Jones Associates, Inc. v. Nino Homes*, 858 F.2d 274, 277 n.2 (6th Cir. 1988).  The Eastern District of Michigan found "access" where the plaintiffs' model home was open to the public only two miles from the defendant's infringing houses, and the plaintiffs had distributed sales brochures containing their copyrighted designs within the town in which the houses were built. *Ronald Mayotte & Assocs. v. MGC Bldg. Co.*, 885 F.Supp. 148, 152 (E.D. Mich. 1994).   The court concluded that plaintiffs had "established the likely existence of access despite the affidavit of [defendant] stating that he

never viewed Plaintiffs [sic] plans." *Id*.  In *J.O. Clark Const.*, 2010 WL 2253541, *14, the court found "access" where the defendants knew the plaintiff created home designs, knew about its website, and had a subscription to a magazine in which the plaintiff's home plans were published.  The court concluded that under the laws of the Sixth Circuit, this was enough to constitute access, despite the defendants' testimony that they had never actually looked at the magazine.  *Id*.

In this case, Defendants knew of Plaintiff, at least by 1993.  They didn't have to go three miles to see Plaintiff's homes, or even two, the plans were delivered directly to Defendants' door.  They were on Plaintiff's mailing list, and received Plaintiff's plans "all the time."  Pl.'s Mot. Ex. 4.  Defendants' testimony that they had never heard of Plaintiff, or reviewed the plan books, is not conclusive.  The fact that the plans were delivered and known to one employee, who on at least one occasion delivered the plan for subsequent use, is sufficient to demonstrate reasonable access.  Consequently, Plaintiff's motion for summary judgment will be granted on both of the issues it raises.

## G

Defendants next argue their plans are not substantially similar to Plaintiff's copyrighted plans as a matter of law.  Defendants' own expert, as well as the other experts in the case, contradict this claim.  Whether Defendants' plans are substantially similar is a material fact, and it is in dispute.  Accordingly, summary judgment is not appropriate on this point.

Notably, "'summary judgment, particularly in favor of a defendant, is a practice to be used sparingly' because substantial similarity is often an extremely close question of fact." *Jones v. Blige*, 558 F.3d 485, 490 (6th Cir. 2009) (quoting *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003)).

In this case, all three experts that have testified found Plaintiff's copyrighted plans and Defendants' disputed plans "substantially similar."  Suzanne Labarthe, Plaintiff's first expert witness, testified "there are substantial similarities in the plans that were presented to me . . . between the various Design Basic plans and the corresponding DeShano plans."  Suzanne Labarthe Dep., 22, ECF No. 68, Ex. S.  Carl Cuozzo, Plaintiff's second expert, testified that each of DeShano's plans were "substantially similar to the Design Basics plan."  Carl Cuozzo Dep., 30-31, ECF No. 68, Exhibit Q.  Further, Mr. Cuozzo testified that "[t]he overlays show enough similarities between the two that it's unimaginable that it's a coincidence."  *Id.*  Defendants' expert's testimony was the same.

> A:    I am assuming that there was some similarities that they probably did indeed start with the plans that they saw from design build – Design Basics.
> Q:    Did you come to that conclusion because of the similarity of the plans, although they're not identical, you could say, oh, I see where that's derived from Design Basics plans?
> A:    Yes.

Vernon Reed Dep., 128-29, ECF No. 68, Ex. L.  Even in the light most favorable to Plaintiff, there are genuine issues of material fact as to whether Plaintiff's and Defendants' plans are similar.  Summary judgment will not be granted on this issue.

## H

Defendants' last point, that they have not infringed on Plaintiff's copyrighted works, will be denied based on similar reasoning.  Summary judgment should rarely be granted in favor of a defendant in the context of a copyright case.  *Jones*, 558 F.3d at 490.  Plaintiff has raised a genuine issue of fact as to whether Defendants have infringed on its copyrighted works.  The testimony of the experts in the case shows this is a very real possibility.  As before, Defendants have not shown they did not infringe upon Plaintiff's copyrights as a matter of law.

**V**

Based on the foregoing, it is **ORDERED** that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 73, is **DENIED**.

It is further **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 43, is **DENIED**.

It is further **ORDERED** that Plaintiff's Motion for Partial Summary Judgment, ECF No. 55, is **GRANTED**.

<div style="text-align:right">

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

</div>

Dated: September 21, 2012

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 21, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>