UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DESIGN BASICS, L.L.C.,

        Plaintiff,

  v.

DESHANO COMPANIES, INC.; DESHANO
HOMES, INC.; DESHANO LUMBER
COMKPANY; DESHANO CONSTRUCTION
COMPANY; COUNTY-WIDE BUILDERS,
INC.; and MICHIGAN CUSTOM HOMES

        Defendants.
_____/

Case No.: 10-14419
Honorable Thomas L. Ludington

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO EXCLUDE DEFENDANTS' EXPERT AND DENYING IN PART**

Vernon Reed was retained by Defendants to review the materials in this case and offer his opinion about the architectural issues. Mr. Reed concluded Plaintiff Design Basics, LLC's homeplans are mass-produced, ordinary, and commonplace, and that they do not deserve copyright protection. Mr. Reed came to four concrete conclusions: (1) any similarities between the Plaintiff's and Defendants' floorplans are not an indication of copyright infringement because Plaintiff's plans are not copyrightable; (2) there is no artistic craftsmanship elements contained in the Plaintiff's floor plans; (3) Plaintiff's elevations are entitled only to "thin" copyright protection; (4) there is not substantial similarity between Plaintiff's and Defendants' designs after filtering out the non-original elements.

Currently before the court is Plaintiff's motion to exclude Mr. Reed as an expert in this case. For the reasons that follow, Plaintiff's motion as to Mr. Reed's four conclusions is granted. Mr. Reed's opinions concerning the differences between Plaintiff's and Defendants' floor plans, pages twenty-two through thirty of his report, will not be excluded.

I

Vernon Reed received his Bachelor's Degree in Architecture from the University of Arkansas in 1958. Defs.' Resp. Ex. 2., ECF No. 61. He has been involved with architecture in one way or another since that time. As Plaintiff does not object to his qualifications to testify concerning architectural matters, a lengthy discussion of his credentials will not be provided. Suffice it to say, Mr. Reed is qualified to testify concerning architectural issues under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Mr. Reed produced a thirty-one page report concerning this case. Eight pages relate to "A Short History of Architecture" and "The American Institute of Architects and the Copyright Laws." Defs.' Resp. Ex. 2. Mr. Reed then spent thirteen pages analyzing the current state of copyright law, and how it does and does not apply to Plaintiff's designs and to architectural plans more broadly. *Id*. Finally, nine pages examine the similarities and differences between Plaintiff's and Defendants' designs, and lists the conclusions Mr. Reed drew from that information. *Id*.

Plaintiff filed a motion to exclude Mr. Reed's report, claiming he is unqualified to provide the opinions he does concerning copyright law, and its applicability in this case. Mr. Reed's evaluation of the differences between the various designs, contained at the end of his report, is well within his experience as an architect. However, Mr. Reed's evaluation of the copyright laws, his attempt to apply them to the facts of this case, and therefore his resulting conclusions, are not within his expertise, and will be excluded.

II

Under *Daubert* and its progeny, district courts must exercise a gatekeeping role in screening the reliability of expert testimony to keep "junk science" away from juries. *Thomas v.*

*Novartis Pharmaceutical Corp.*, 443 F. App'x 58, 60 (6th Cir. 2011) (citing *Daubert*, 509 U.S. 113). Consistent with this directive, the Federal Rules of Evidence provide:

> A witness who his qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule gives district courts "broad discretion to determine whether a putative expert's testimony would be inadmissible junk science or instead would be falling within the 'range where experts might reasonably differ.'" *Thomas*, 443 F. App'x at 60 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999).

Architects are experts within the scope of Rule 702. *See* Fed. R. Evid. 702 advisory committee's note ("[W]ithin the scope of this rule are not only experts in the strictest sense of the word, e.g. physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers or landowners testifying to land values."). "An expert must possess a verifiable expertise in the subject matter for which he or she seeks to testify." *Wheeler Peak, LLC v. L.C.I.2, Inc.*, 2010 WL 611011 (D.N.M. 2010); *see also* Fed. R. Evid. 702. The expert is also "required to possess such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank,* 374 F.3d 917, 928 (10th Cir. 2004).

### III

In this case, Mr. Reed has wandered afield from his area of expertise instead of confining his opinions to his architectural knowledge. It is therefore appropriate to exclude his testimony

and opinions concerning issues outside of his architectural qualifications, and also where he based his opinions on the incorrect legal framework.

Other courts have allowed expert testimony from architects in copyright infringement cases. In *Nelson-Salabes Inc. v. Morningside Holdings,* 2001 WL 419002 at *5 (D.Md. Feb. 16, 2001), *rev'd in part on other grounds*, 284 F.3d 505 (4th Cir. 2002), the court upheld the use of expert testimony in an architectural copyright action. The plaintiff's expert testified that the defendants' design contained numerous design elements that were substantially similar to the design elements in plaintiffs design. *Id.*

In *Chirco v. Charter Oak Homes, Inc*., 2003 WL 25697322, *3 (E.D. Mich. June 23, 2003), the plaintiff offered expert testimony concerning the substantial similarity between two competing architectural designs. The court noted that the expert, who held a master's degree in architecture and was a tenured professor on the topic, was "well qualified by knowledge, skill, experience, training and education." *Id*.

Particularly relevant to the analysis here, the court in *Chirco* did not allow the highly qualified expert to stray from the bounds of his expertise. "Defendants also argue that [the expert] has not opined on originality, protected features, and copyright infringement. However, as noted by plaintiffs, these are copyright issues, legal issues and legal terms, on which the Court, not [the expert], will instruct the jury." The court noted that this architectural expert was properly limited to "opinions as to architectural similarity . . . ." *Id.*

Defendants' expert Mr. Reed, although less qualified than the expert in *Chirco*, attempts to do much more. He notes in his report, "It is clear from the language of the laws governing the copyright of architecture that the common building blocks of a house *or its plans* are not copyrightable." Defs.' Resp. Ex 2 (emphasis added). Here, Mr. Reed attempts to opine on

copyright law, which is not his specialty, and he is incorrect. The Copyright Act maintains that houseplans can be copyright protected based on the design as a whole. An "architectural work" is defined to include "the *overall form*, as well as the *arrangement and composition of spaces and elements in the design*, but does not include individual standard features." 17 U.S.C. § 101 (emphasis added). The legislative history concerning the 1990 Architectural Works Copyright Protection Act ("AWCPA") supports this conclusion. "Contrary to the Committee's report accompanying the 1976 Copyright Act with respect to industrial products, the aesthetically pleasing overall shape of an architectural work could be protected under this bill." H.R. Rep. No. 735 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6935, 6951. "Creativity in architecture frequently takes the form of a selection, coordination, or arrangement of unprotected elements into an original, protectible[1] whole." *Id.* at 6949. Courts have held that house plans may deserve copyright protection. *See Frank Betz Associates, Inc. v. Signature Homes, Inc.*, 2010 WL 1373268, *3 (M.D. Tenn. Mar. 29, 2010); *Frank Betz Associates, Inv. V. J.O. Clark Const., LLC.*, 2010 WL 4628203, *6 (M.D. Tenn. Nov. 5, 2010).

Further, Mr. Reed states that only "highly unique artistic expressions" deserve copyright protection. Defs.' Resp. Ex. 2. Again, he is incorrect. It is black-letter law that courts accept as protected "any work which by the most generous standard may arguably be said to evince creativity." 1–2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.08 (2012). To qualify for copyright protection, a work must be original — it must possess "at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991). The work need not be "particularly novel or unusual." *Mattel, Inc. v. Goldberger Doll Mfg. Co.,* 365 F.3d 133, 135 (2d Cir. 2004). "[T]he requisite level of creativity is extremely low;

---

[1] Between "protectable" and "protectible," "The first is preferred." Bryan A. Garner, *Garner's Dictionary of Legal Usage*, 725 (Oxford Univ. Press 3d ed. 2011). We use the latter only to maintain accurate citations.

even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Feist,* 499 U.S. at 345 (citation and internal quotation marks omitted). The house need not be Frank Lloyd Wright's Robie House in Chicago to be protectable.

Mr. Reed discusses in his report that no mass market housing plans can be copyright protected, that these plans only deserve protection against "identical copying." Defs.' Resp. Ex. 2. This assertion simply cannot be squared with the language of the Copyright Act and the relevant cases on point. Indeed, it is likely the court in *Chirco* did not allow the architectural expert to opine on issues of copyright law for similar reasons.

Mr. Reed's first and third conclusions can, and should, be excluded on this basis. The fact that he determined Plaintiff's floorplans "are not copyrightable" renders his conclusion on this point outside his expertise, unreliable, irrelevant, and unhelpful to the trier of fact. Similarly, his conclusion that Plaintiff's elevations are only entitled to "thin copyright protection" is not within his expertise, and should not be presented to the jury.

Mr. Reed's second opinion, that there is no artistic craftsmanship in Plaintiff's plans, is wholly irrelevant. Artistic craftsmanship is not something that the law requires for architectural works to receive copyright protection. It is only required of pictoral, graphic, and sculpture works under 17 U.S.C. § 102(5). The AWCPA specifically removed architectural works from this analysis. "In each case, the courts must be free to decide the issue upon the facts presented, free of the separability conundrum presented by the useful articles doctrine applicable for pictorial, graphic, and sculptural works." 1990 U.S.C.C.A.N. at 6952. Regardless, Mr. Reed imposes such a requirement in his revolutionary "four step analysis" to determining if

architectural works deserve copyright protection. Defs.' Resp. Ex. 2. This opinion should be excluded.

Finally, Mr. Reed's fourth opinion, that the design plans at issue are not substantially similar after excluding non-original forms, should also be kept from the jury. The analysis does not conform with the law as Mr. Reed failed to consider the houseplans as a whole. Defs.' Resp. Ex. 2. "Considering the works as a whole is particularly important because protectible expression may arise through the ways in which artists combine even unprotectible elements. For example, while color is not protectible, the manner in which an artist selects, coordinates, and arranges color may be." *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1296 (D.C. Cir. 2002). The fact that Mr. Reed did not consider Plaintiff's floorplans as a whole, because he does not believe the plans deserve copyright protection, is fatal to his analysis. Accordingly, this opinion lacks the requisite reliability and relevance under Rule 702.

However, pages twenty-two through thirty of Mr. Reed's report are just the kind of expert analysis that is appropriate. Although he "found no protectable elements," that actually may have helped to constrain his analysis to the proper bounds. Instead of opining about the law, Mr. Reed simply "point[s] out the obvious differences" between the plans. Recognizing how floorplans are dissimilar, by a qualified architectural expert, is just the type of opinion courts have deemed useful to the trier of fact. As such, this section of Mr. Reed's report should not be excluded.

## IV

Based on the foregoing, Mr. Reed's opinions and testimony are excluded, except for pages twenty-two through thirty of his report, dealing with the differences between Plaintiff's and Defendants' floorplans.

- 8 -

It is **ORDERED** that Plaintiff's motion is **GRANTED** in part, and **DENIED** in part.

                                                  s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

Dated: September 21, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 21, 2012.

                            s/Tracy A. Jacobs
                            TRACY A. JACOBS